1          THE HONORABLE JOHN C. COUGHENOUR

2

3

4

5

6

7                       UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF WASHINGTON
8                                 AT SEATTLE

9    DWIGHT HOLLAND,                          CASE NO. C12-1409-JCC

10                           Plaintiff,       ORDER GRANTING
                                              DEFENDANT'S MOTION FOR
11           v.                               SUMMARY JUDGMENT

12   JAMES W DRAPER,

13                           Defendant.

14

15         This matter comes before the Court on Defendant's motion for summary judgment (Dkt.

16   No. 22) and motion to strike Plaintiff's surrepy (Dkt. No. 29). Having thoroughly considered the

17   parties' briefing and the relevant record, the Court hereby GRANTS the motions for the reasons

18   explained herein.

19   **I.      BACKGROUND**

20         Defendant James Draper is an attorney who represented Alaska USA Federal Credit

21   Union ("Alaska") in its efforts to collect a consumer debt from Plaintiff Dwight Holland. In

22   2009, Holland purchased a truck from the Puyallup Auto Center. Holland entered into a retail

23   installment contract, promising to repay the $12,000 he borrowed to buy the truck and granting a

24   security interest in the truck. (Dkt. No. 23-1 at 4–5.) The Puyallup Auto Center assigned its

25   interest in the contract to Alaska. (Dkt. No. 231 at 4.)

26         Holland made monthly payments of $244.00 from June 2009 until August 2011. (Dkt.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 1

1    No. 23-1 at 11–33.) Holland did not make payments in September, October, or November of

2    2011, but according to the monthly statements Alaska mailed to Holland for those months, the

3    "Next Payment Due Date" was December 14, 2011. (Dkt. No. 23-1 at 11; Dkt. No. 26-8 at 4–6.)

4    Holland made payments in December 2011 and January and February of 2012, reducing the

5    balance on his loan to $6,136.15. (Dkt. No. 23-1 at 11.)

6          Holland mailed Alaska a check numbered 193 and dated January 18, 2012 in the amount

7    of $6,100.00 but wrote on the memo line of the front of the check "EFT Only! For Discharge of

8    Debt." (Dkt. No. 23-1 at 7–8.) On the back of the check he wrote:

9          NOT FOR Deposit
           EFT Only
10         For Discharge of Debt

11   (Dkt. No. 23-1 at 7.) Alaska did not negotiate the "check." (Dkt. No. 23-1 at 2.) Holland sent

12   Alaska a letter demanding that his debt be discharged consistent with the "instrument" he had

13   mailed to Alaska. (Dkt. No. 19-1 at 4.) He wrote: "The instrument was not return [sic] to me for

14   correction, therefore according to UCC rules and regs, the account MUST be discharged

15   according to the face value of the instrument tendered." (Dkt. No. 19-1 at 4.)

16         In April 2012, Holland sent Alaska a check for $120.00 and wrote on the memo line on

17   the front of the check "Final Payment for loan." (Dkt. No. 23-1 at 10.) He also sent Alaska a

18   letter stating that the $120 check was sufficient to satisfy his obligation because Alaska had not

19   returned "the original instrument number 193." (Dkt. No. 23-1 at 10.) Alaska did not negotiate

20   the $120.00 check because it did not agree that it was a "final payment." (Dkt. No. 23-1 at 2.)

21   Alaska then referred the matter to its attorney, Draper. (Dkt. No. 23-1 at 2.)

22         Draper sent Holland a letter dated April 11, 2012. The letter was on letterhead indicating

23   that it was from "James W. Draper, Attorney at Law." (Dkt. No. 19-1 at 1.) It stated in relevant

24   part:

25         Dear Mr. Holland:
           I represent Alaska USA Federal Credit Union.  This letter is to advise you that
26         your obligation is delinquent.  Alaska USA last received a payment in February
           2012. You granted Alaska USA a security interest in a 2006 Dodge Dakota truck

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 2

1

2

3
to secure payment of the obligation. Because of your default, Alaksa USA is entitled to accelerate the entire amount due on the obligation and is hereby demanding immediate payment in full of your obligation within 10 days of the date of this letter. . . . According to Alaska USA's records, the following amounts are immediately due and payable:

4
Balance in full: principal, interest & charges as of 4/23/2012          $6,256.05

5

6

7
If you cannot or will not pay the balance in full, then Alaska USA is demanding the immediate surrender of the possession of the vehicle so it can be disposed of in accordance with the law and the proceeds applied to this obligation. . . .

. . . .

8

9

10
IF YOU DISPUTE THE VALIDITY OF THIS DEBT, OR ANY PORTION THEREOF, IN WRITING WITHIN 30 DAYS OF RECIEPT OF THIS LETTER, WE WILL MAIL VERIFICATION TO YOU.

. . . .

11

12

13

14

15
THE LAW DOES NOT REQUIRE ME TO WAIT UNTIL THE END OF THE 30 DAY PERIOD BEFORE FILING SUIT ON THIS DEBT. IF, HOWEVER, YOU REQUEST PROOF OF THE DEBT OR THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR WITHIN THE 30 DAY PERIOD THAT BEGINS WITH RECIEPT OF THIS LETTER, THE LAW REQUIRES ME TO SUSPEND ANY EFFORTS TO COLLECT THIS DEBT UNTIL I MAIL THE REQUESTED INFORMATION TO YOU.

16
THIS IS AN ATTEMPT TO COLLECT A DEBT, AND INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

17

18
(Dkt. No. 26-4 at 2–3.)

19
        Draper filed suit on Alaska's behalf in King County Superior Court. (Dkt. No. 26-5 at 2–

20
5.) The state court complaint states that as of April 10, 2012, the total amount due on the contract

21
was "principal $6,136.15, with interest and other charges of $77.48." (Dkt. No. 26-5 at 3.) The

22
state court complaint seeks a judgment of $6,213.63 plus interest accrued since April 10, 2012

23
and reasonable attorney's fees. (Dkt. No. 26-5 at 4.)

24
        Holland alleges that Draper's April 11, 2012 letter violated the Fair Debt Collection

25
Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the Washington Consumer Protection Act

26
("CPA"), Revised Code of Washington § 19.86 *et seq*.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 3

1    **II.      DISCUSSION**

2          **A.      Holland's Surreply**

3          Draper filed a surreply under Local Civil Rule 7(g) asking the Court to strike Holland's

4    "reply" in opposition to Draper's reply (Dkt. No. 29). *See* W.D. Wash. Local Civ. R. 7(g).

5    Draper filed and properly noted his motion for summary judgment. (Dkt. No. 22.) Holland filed a

6    timely response in opposition to Draper's motion for summary judgment. (Dkt. No. 25.) Draper

7    then filed a timely reply in support his motion. (Dkt. No. 27.) Holland than filed a "reply" to

8    Draper's reply. (Dkt. No. 28) ("surreply").

9          Local Civil Rule 7(b) provides for the filing of a motion, a response by the nonmoving

10   party, and a reply by the moving party. W.D. Wash. Local Civ. R. 7(b). Neither Local Rule 7(b),

11   nor Federal Rule of Civil Procedure 56, authorize a surreply. *King Cnty. v. Rasmussen,* 143 F.

12   Supp. 2d 1225, 1228 (W.D. Wash. 2001). The Court STRIKES Holland's surreply (Dkt. No. 28),

13   because it was not authorized by either the local rules or the Court.

14         **B.      Summary Judgment Standard**

15         A court must grant summary judgment "if the movant shows that there is no genuine

16   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

17   Civ. P. 56(a). An issue of fact is genuine if there is sufficient evidence for a reasonable jury to

18   find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). At

19   the summary judgment stage, evidence must be viewed in the light most favorable to the

20   nonmoving party, and all justifiable inferences are to be drawn in the nonmovant's favor. *Id.* at

21   255. The Court has recited all facts in the light most favorable to Holland.

22         **C.      Fair Debt Collection Practices Act**

23              **1.   Identification as a Debt Collector**

24         Holland alleges that Draper's letter violated 15 U.S.C. § 1692e because it failed to

25   expressly state that it was a communication from a debt collector. (Dkt. No. 19 at 5.) The

26   FDCPA is a remedial statute enacted to "eliminate abusive debt collection practices by debt

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 4

1  collectors, to insure that those debt collectors who refrain from using abusive debt collection

2  practices are not competitively disadvantaged, and to promote consistent State action to protect

3  consumers against debt collection abuses." 15 U.S.C. § 1692. Under section 1692e(10), "[t]he

4  use of any false representation or deceptive means to collect or attempt to collect any debt"

5  violates the FDCPA. Under section 1692e(11), "[t]he failure to disclose in the initial written

6  communication with the consumer . . . that the debt collector is attempting to collect a debt and

7  that any information obtained will be used for that purpose, and the failure to disclose in

8  subsequent communications that the communication is from a debt collector" violates the

9  FDCPA.

10        "Whether conduct violates [§ 1692e] . . . requires an objective analysis that takes into

11  account whether the least sophisticated debtor would likely be misled by the communication."

12  *Gonzales v. Arrow Fin. Servs.*, 660 F.3d 1055, 1061 (9th Cir. 2011) (alteration in original)

13  (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010)) (internal

14  quotation marks omitted). The least sophisticated debtor standard is "lower than simply

15  examining whether particular language would deceive or mislead a reasonable debtor." *Id.* The

16  standard, however, "preserves a quotient of reasonableness and presumes a basic level of

17  understanding and willingness to read with care." *Id.* at 1062. "The FDCPA does not subject debt

18  collectors to liability for bizarre, idiosyncratic, or peculiar misinterpretations." *Id.* (internal

19  quotation marks omitted).

20        Holland argues that under section 1692e Draper's letter should have said, "I am a debt

21  collector," or "this law office is debt collector," or something to that effect. The Court does not

22  agree. Draper's letter advised Holland that it was "an attempt to collect a debt" and that

23  "information obtained will be used for that purpose." (Dkt. No. 26-4 at 3.) The language

24  included in Draper's letter is nearly identical to the language found in section 1692e(11).

25  Moreover, the only reasonable conclusion that even the "least sophisticated debtor" could draw

26  from Draper's letter is that it is from a lawyer attempting to collect a debt on behalf of Alaska,

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 5

1  which was exactly the case and in no way misleading. Any other reading of the letter as a whole

2  would be bizarre and idiosyncratic. *See Ross v. Commercial Fin. Servs., Inc.*, 31 F. Supp. 2d

3  1077, 1079 (N.D. Ill. 1999) (disclosures required by the FDCPA need not parrot the language of

4  section 1692e(11) and a communication must be read as a whole to determine whether it is

5  misleading). Accordingly, Draper's motion for summary judgment on Holland's claim that the

6  April 11, 2012 letter violated section 1692e because it failed to properly identify Draper as a debt

7  collector is GRANTED.

8  **2.  Amount of the Debt**

9  Holland also argues that Draper's April 11 letter violated the FDCPA because it

10  erroneously stated that the amount due as of April 23, 2012 was $6,256.05, which is $42.42 more

11  than the $6,213.63 Draper and Alaska alleged in the state court complaint that Holland owed as

12  of April 10, 2012. Section 1692e(2) provides that it is a violation of the FDCPA to falsely

13  represent the amount of any debt. The $6,213.63 amount due as of April 10, 2012 is supported

14  by a spreadsheet attached to the declaration of Alaska employee Michelle Banks and filed in the

15  state court proceeding, which states that the principle balance was $6,136.15 and the total

16  interest and fees accrued was $77.48. (Dkt. No. 23-1 at 34.)

17  As Draper explained to Holland in his April 24, 2012 letter verifying the debt (Dkt. No.

18  19-1 at 12) ("verification letter"), Holland's debt was accruing interest at the rate of $1.34 per

19  day. Accordingly, $17.42 of the disputed $42.42 is explained by the additional thirteen days

20  worth of interest that would have accrued by April 23, 2012 ($1.34 x 13 = $17.42). That leaves a

21  difference of twenty-five dollars ($42.42-$17.42 = $25.00).

22  Draper has not explained the basis for the twenty-five dollars. Instead, he argues that

23  Holland is barred from re-litigating that issue because it was decided by the state court and that

24  the difference of $42.42 could not give rise to a FDCPA violation because it was "immaterial."

25  Draper's preclusion argument fails because Alaska's complaint in the state court sought

26  only the lower amount of $6,213.63, plus interest and fees accrued since April 10, 2012. (Dkt.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 6

1   No. 26-5 at 3.) The state court had no occasion to resolve the issue of how much Holland owed

2   *as of* April 23, 2012. By the time Alaska sought summary judgment in the state court, additional

3   interest and fees had accrued so the superior court's rulings do not address Holland's argument

4   that the April 11 letter overstated the amount he owed.[1]

5          Draper relies on *Donohue v. Quick Collect, Inc.*, to argue that any misrepresentation of

6   the amount Holland owed was "immaterial" because it did not frustrate Holland's ability to

7   intelligently choose his response to the April 11 letter. 592 F.3d at 1034. In *Donohue*, the total

8   amount due included in the debt collection letter at issue was correct, the letter simply

9   "mislabeled" pre-assignment finance charges and interest as "interest." *Id.* Explaining why the

10  mislabeling did not impact plaintiff's ability to "intelligently choose her action concerning her

11  debt," the court said she "could have challenged the accuracy or legality of the total debt and

12  principal owed, futile as that may have been, or [she] could have paid the accurately stated sum

13  to settle her debt." *Id.*

14         Based on the evidence submitted by the parties, the only reasonable conclusion is that the

15  twenty-five dollars is an additional fee related to Draper's collections efforts. The retail

16  installment contract that Holland signed specifically authorizes Alaska to recover the costs of

17  collection efforts (*see* Dkt. No. 23-1 at 5, ¶ 3(c)). To the extent that there is a twenty-five dollar

18  discrepancy in the amount Draper sought to collect from Holland, that discrepancy is immaterial

19  because it was money that Holland owed and because, as in *Donahue*, Holland could easily have

20  challenged the accuracy of the total debt owed. Draper's motion for summary judgment on

21  Holland's claim regarding the amount of the debt Draper sought to collect is GRANTED.

22

23

24         [1] Draper's motion for summary judgment argues that issue preclusion bars some of
    Holland's claims. The Court is inclined to agree that issue preclusion would apply to any issue
    actually litigated before the state court. For example, the question of whether the "instrument"
25  Holland sent to Alaska was sufficient to discharge his debt was resolved against Holland by the
    state court. (Dkt. No. 24-1 at 11, 15.) The Court concludes, however, that it need not address
26  preclusion to resolve Draper's summary judgment motion.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 7

### 3. Verification of the Debt

Holland also claims that Draper violated 15 U.S.C. § 1692g(b) by failing to properly

verify the debt in response to Holland's written request to do so. Section 1692g(b) provides:

> If the consumer notifies the debt collector in writing within the thirty-day period
> described in subsection (a) of this section that the debt, or any portion thereof, is
> disputed, or that the consumer requests the name and address of the original
> creditor, the debt collector shall cease collection of the debt, or any disputed
> portion thereof, until the debt collector obtains verification of the debt or a copy
> of a judgment, or the name and address of the original creditor, and a copy of such
> verification or judgment, or name and address of the original creditor, is mailed to
> the consumer by the debt collector.

According to the Ninth Circuit, "verification of a debt involves nothing more than the debt

collector confirming in writing that the amount being demanded is what the creditor is claiming

is owed." *Clark*, 460 F.3d at 1173–74 (quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th

Cir. 1999)).

Holland sent Draper a letter dated April 18, 2012, which requested verification of the

debt. (Dkt. No. 19-1 at 9–11.) Draper was required to respond to this request under section

1692g(b). Draper sent Holland the previously discussed April 24, 2012 letter in response. The

letter reiterates that Draper represented Alaska. (Dkt. No. 19 at 12.) It states that Draper is

providing verification of "the debt owed" to Alaska, including a copy of the retail installment

contract and "the computer generated payoff for the account as of April 10, 2012." (Dkt. No. 19-

1 at 12.) The letter further advised Holland that interest was continuing to accrue at the rate of

$1.34 per day and that Alaska intended to file suit against Holland. (Dkt. No. 19-1 at 12.)

Holland describes the "computer generated payoff" document as "an unintelligible

computer printout that looked as though it was printed from a personal computer and substandard

printer." (Dkt. No. 26 at ¶ 17.) He also asserts that none of the documents Draper sent him were

on Alaska letterhead. (Dkt. No. 26 at ¶ 17.) Holland also argues that Draper was required to

provide "a genuine certified copy of a contract/agreement, sworn and attested to by a responsible

partly [sic] legally authorized to contract on behalf of [Alaska]" and proof that Draper was

1   lawfully authorized to represent Alaska (Dkt. No. 19 at 7). Holland's arguments that Draper was

2   required to provide a certain quality of document, sworn copies of the retail installment contract,

3   or proof that he represented Alaska are clearly inconsistent with the standard for verification set

4   forth in *Clark* and are meritless.

5        Draper's April 24 verification letter satisfied the standards set forth in *Clark*. It stated that

6   Alaska was in fact seeking to collect the debt, provided a copy of the signed contract giving rise

7   to the debt, provided a document setting forth the basis for the amount owed, and explained the

8   rate at which interest was accruing. (Dkt. No. 19 at 12.) Accordingly, Draper's motion for

9   summary judgment on Holland's claim that Draper failed to verify the debt is GRANTED.

10       **D.      Consumer Protection Act**

11       To prevail on a CPA claim, a plaintiff must establish five elements: (1) an unfair or

12  deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4)

13  injury to plaintiff in his or her business or property; and (5) causation.  *Hangman Ridge Training*

14  *Stables, Inc. v. Safeco Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). Draper argues that none of the

15  five *Hangman Ridge* factors are satisfied in this case.

16       "Whether a particular act or practice is unfair or deceptive is a question of law." *Panag v.*

17  *Farmers Ins. Co. of Wash.*, 204 P.3d 887, 894 (Wash. 2009). Conduct that violates the

18  Washington Collection Agency Act ("CAA") is a per se unfair act or practice occurring in trade

19  or commerce for purposes of the CPA. *See Hangman Ridge*, 719 P.2d at 535; Wash. Rev. Code

20  § 19.16.440. The CAA prohibits collection agencies from "attempting to collect amounts not

21  actually owed." *Panag*, 204 P.3d at 897. Moreover, "collection agencies may be held

22  accountable for deceptive collection practices" even where the conduct does not fall within the

23  scope of the CAA. *Id.* at 892. A communication is deceptive "if there is a representation,

24  omission or practice that is likely to mislead a reasonable consumer." *Id.* at 895 (internal

25  quotation marks omitted).

26       As explained in the Court's analysis of Holland's FDCPA claim, Draper's failure to

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 9

1    expressly state, "I am a debt collector" was not deceptive. The Court has also concluded that

2    Draper's April 11 letter did not materially misstate the amount of the debt owed. Even if it had,

3    however, Holland's CPA claim would fail.

4         Holland cannot establish damages and causation, the fourth and fifth elements of a CPA

5    claim.[2] In order to establish injury to his "business or property" a CPA plaintiff must show that

6    his "property interest or money is diminished because of the unlawful conduct even if the

7    expenses caused by the statutory violation are minimal." *Panag*, 204 P.3d at 899. Remitting

8    payment in response to a deceptive collections communication is not the only cognizable injury

9    that may be caused by a violation. *Id.* at 900. "Investigation expenses and other costs resulting

10   from a deceptive business practices sufficiently establish injury." *Id.* at 902. But, "a consumer's

11   mere involvement in having to defend against [a] collection action and having to prosecute a

12   CPA counterclaim is insufficient to show injury to her business or property." *Id.* at 901 (internal

13   quotation marks omitted).

14        Holland has set forth alleged damages arising from Draper's efforts to collect the debt

15   Holland owed to Alaska, including the costs of the state court suit against him and the judgments

16   entered against him. (Dkt. No. 26 at ¶ 29 & Ex. G.) Those are costs associated with defending a

17   collection action and do not satisfy the fourth element of a CPA claim. *See Panag*, 204 P.3d at

18   901. To the extent that Holland argues that the costs of postage for his correspondence with

19   Draper are damages caused by the alleged CPA violation, the Court notes that none of Holland's

20   letters to Draper raise the alleged error in the amount owed. Instead, his letters argue that his debt

21   was discharged by the "instrument" he mailed to Alaska in January of 2012. (*See, e.g.*, Dkt. No.

22   19-1 at 10.) The possible twenty-five dollar error in the amount due stated in the April 11 letter

23   _____

24        [2] The Court expresses no opinion as to whether Holland might be able to establish the
     third element of a CPA claim, public interest impact. Holland's allegations about Draper's
25   involvement with a company called Northwest Trustee Services appear to be factually incorrect,
     were not pled in his complaint, and are irrelevant to this case. Accordingly, the Court does not
26   consider them further.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 10

1  was not the reason Holland to send his responsive letters to Draper. For all these reasons, the

2  Court GRANTS Draper's motion for summary judgment on Holland's CPA claim.

3  **III.     CONCLUSION**

4          For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 22) is

5  GRANTED. Holland's claims under the FDCPA and CPA are DISMISSED with prejudice. In

6  addition, Holland's unauthorized surreply (Dkt. No. 28) is STRICKEN. The Clerk is respectfully

7  directed to CLOSE this case.

8          DATED this 8th day of May 2013.

9

10

11

12

13

14                                                  John C. Coughenour
                                                    UNITED STATES DISTRICT JUDGE
15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 11